Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO TRON, derivatively on behalf of EMBARK TECHNOLOGY, INC. f/k/a NORTHERN GENESIS ACQUISITION CORP. II, | Case No.: |
| Plaintiff, | |
| v. | DEMAND FOR JURY TRIAL |
| IAN ROBERTSON, KEN MANGET, ALEX RODRIGUES, RICHARD HAWWA, PAUL DALGLISH, PAT GRADY, CHRIS JARRATT, BRANDON MOAK, ROBERT SCHAEFER, AND BRAD SPARKES, | |
| Defendants, | |
| And | |
| EMBARK TECHNOLOGY, INC. f/k/a NORTHERN GENESIS ACQUISITION CORP. II, | |
| Nominal Defendant. | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## **INTRODUCTION**

Plaintiff Sergio Tron ("Plaintiff"), by Plaintiff's undersigned counsel, derivatively and on behalf of nominal defendant Embark Technology, Inc. f/k/a Northern Genesis Acquisition Corp. II ("Embark" or the "Company"), files this Verified Shareholder Derivative Complaint against Defendants Ian Robertson ("Robertson"), Paul Dalglish ("Dalglish"), Chris Jarratt ("Jarratt"), Robert Schaefer ("Schaefer"), and Brad Sparkes ("Sparkes") (collectively, the "NGA Defendants"), and Ken Manget ("Manget"), Alex Rodrigues ("Rodrigues"), Richard Hawwa ("Hawwa"), Brandon Moak ("Moak"), and Pat Grady ("Grady") (collectively with the NGA Defendants, the "Individual Defendants," and together with Embark, the "Defendants") for breaches of their fiduciary duties as directors and/or officers of Embark; against Defendants Robertson, Manget, Dalglish, Jarratt, Schaefer, and Sparkes for violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"); and against Defendants Robertson, Manget, Jarratt, Dalglish, Schaefer, Sparkes, Rodrigues, and Hawwa for contribution under Sections 11(f) of the Securities Act of 1933 ("Securities Act") and 21D of the Exchange Act of 1934 ("Exchange Act"). As for Plaintiff's complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Embark, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Company directors and officers from January 15, 2021 through January 5, 2022 (the "Relevant Period"). Specifically, between July 2, 2021 and November 24, 2021, the Individual Defendants made and/or caused the Company to violate pertinent accounting rules and to make false and misleading statements and omissions in Embark's financial statements filed with the SEC (the "False & Misleading Statements Relevant Period").

2.      Headquartered in San Francisco, California, Embark is a Delaware corporation that builds software for carriers to enable autonomous trucks within their fleets. The autonomous vehicle company offers software as a service product ecosystem, such as Embark driver, Embark universal interface, and Embark guardian.

3.      Originally, the Company was a special purpose acquisition company ("SPAC") called Northern Genesis Acquisition Corp. II ("NGA"), and its purpose for forming was to effect a merger, stock exchange, acquisition, reorganization, or similar business combination with one or more businesses. It had its initial public offering ("IPO") on January 15, 2021.

4.      The Company filed with the SEC its prospectus in connection with the IPO, where it reassured the stockholders that the Company's management team had significant experience identifying, evaluating and acquiring businesses, and would conduct a sufficient due diligence review before making any such determinations.

5.      On June 22, 2021, the Company filed a merger agreement with the SEC where it stated that it would be merging with Embark Trucks, a Delaware Corporation ("Legacy Embark"). Legacy Embark was a startup company that developed self-driving truck technology designed for freight and logistic services.

6.      On June 23, 2021, the Company and Legacy Embark issued a joint press release where the Company announced that it would merge with Legacy Embark (the "Merger").  The Company ensured that it would work with Legacy Embark and make sure it transitions to a "great public company."

7.       On July 2, 2021, the Company filed a Form S-4 registration statement with the SEC that became effective on October 18, 2021 (the "Registration Statement"). Included in the Registration Statement was a preliminary proxy statement and prospectus for a special meeting with Company shareholders to vote on the Merger (the "Preliminary Proxy Statement"). The Preliminary Proxy Statement was filed as definitive on October 19, 2021. The Preliminary Proxy Statement contained NGA's condensed financial statements for the three and six months ending on June 30, 2021 and included materially false and misleading statements.

8.       The Company sent the Preliminary Proxy Statement to its shareholders on October 6, 2021 for the shareholders to approve the Merger proposed during a November 9, 2021 special meeting. The Merger was subsequently approved by NGA shareholders during the special meeting.

9.       On November 10, 2021, the Company merged with Legacy Embark and changed its name from "Northern Genesis Acquisition Corp. II" to "Embark Technology, Inc."

10.       Before the market opened on the same day that the Merger closed, the Company filed a Form 10-Q with the SEC on November 10, 2021 for the quarter ended September 30, 2021 ("3Q21"). In the 3Q21, the Company disclosed a "revision" to its previously issued financial statements, admitting that there was a "reclassification error" for the statements as of September 30, 2021. The Company noted that the errors were related to the temporary equity and permanent equity for stockholders.

11.       However, the reclassification error was more significant than initially presented. The error ended up requiring the Company to disclose more than it did in the partial disclosure in the 3Q21. It should have included the impact of the error on the Company's financials as of and for the three and six months ended June 30, 2021, or on the Company's financials as of for the three and nine months ended September 30, 2021.

12.       Moreover, the disclosure failed to state that the errors would require the Company to issue a restatement in the future. The disclosure also failed to address that the Company violated U.S. Generally Accepted Accounting Principles ("GAAP"), which have been around since 2009. In addition, the Company did not maintain effective internal controls over financial reporting.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13.    The Company filed a Form 8-K with the SEC on November 17, 2021 ("November 2021 8-K"). The November 2021 8-K disclosed that the Company's "audited balance sheet as of January 15, 2021 and the Company's unaudited financial statements as of March 31, 2021 and for the three months ended March 31, 2021 should no longer be relied upon." The Company admitted that those statements would need to be restated and were unreliable because of the reclassification of all the Company's public shares as temporary equity.

14.    As a result of this news, Embark's share price fell to $7.17 per share at the close of November 18, 2021, falling $0.72 per share (or approximately 9%). [1]

15.    On November 24, 2021, the Company filed an amended Form 10-Q/A with the SEC to its 3Q21 ("Amended 3Q21"). In the Amended 3Q21, the Company announced that it issued a restatement for its condensed financial statements as of January 15, 2021, as of and for the three months ended March 31, 2021, as of and for the three and six months ended June 30, 2021, and for three and nine months ended September 30, 2021 (the "Restatement"). The Restatement was due to the Company's accounting error made in classifying the redeemable common stock.

16.    As a SPAC, the Company had to maintain its stockholders' equity above $5,000,000, as the Company could only complete its Merger if the Company had net tangible assets of at least $5,000,001 according to the Company's charter. In order to continue to exist as a SPAC company, the Company incorrectly classified some of its public shares as "shares not subject to redemption."

17.    Importantly, at the time when the financial statements were issued, the misclassification of the shares was completely in error according to GAAP. GAAP provides guidance which SPACs must consider in determining whether to classify shares issued in the legal form of equity if they are redeemable at: (a) a fixed/determinable price on a fixed/determinable date; (b) the holder's option; or (c) when an event outside the control of the issuer occurs. After re-evaluating, Company's management determined that the public shares included a set of provisions that required the Company to reclassify the public shares

---

[1] On August 16, 2022, Embark Technology announced a 1-for-20 reverse stock split. Embark's Class A shares began to trade on a split-adjusted basis when the market opened on August 17, 2022. On the close of November 18, 2022, the split adjusted price per share was $143.40 and this was approximately $14 per share lower than the previous close.

as temporary equity, despite that the Company was required to hold a threshold of $5,000,000 in order to complete the Merger.

18. Due to the improper classification, the Company issued the Restatement to disclose the material errors made in the Company's prior financial statements. The material errors were associated with the reported stockholders' equity, which was essential to determining if the Company could continue to operate as a SPAC as a public company. The Company also had to adjust the reported earnings per share ("EPS") and other metrics that impacted the additional paid in capital with stockholders' equity on the balance sheet as a result of the Company's material errors.

19. As a result of this news, Embark's shares fell to a close at $8.01 per share on November 24, 2021, falling $0.51 (or approximately 6%) from the previous close. [2]

20. The misclassification resulted in the Company's financial statements reporting the incorrect EPS and were, therefore, critical to investors. Furthermore, the errors resulted in the Company incorrectly reporting other material financial information. Such information is significant and essential facts that investors consider before deciding to invest into a Company and it is crucial for this information to be correctly reported. The basis on which the SPAC was continuing to operate was also misstated on the financial statements.

21. EPS is an essential metric to determine the health and profitability of a corporation. EPS is a financial ratio that calculates how much profit the company is generating per share, and it informs the shareholders how much money they would receive if the company were to be liquidated.

22. On January 6, 2022, soon after the Merger, The Bear Cave published a report titled "Problems at Embark Technology" (the "Bear Cave Report"). The Bear Cave Report stated that "Embark appears to lack true economic substance," and that the "company holds no patents, has only a dozen or so test trucks, and may be more bark than bite."

---

[2] On August 16, 2022, Embark Technology announced a 1-for-20 reverse stock split. Embark's Class A shares began to trade on a split-adjusted basis when the market opened on August 17, 2022. On the close of November 18, 2022, the split adjusted price per share was $160.20 and this was approximately $10 per share lower than the previous close.

23.     During the Relevant Period, the Individual Defendants breached their fiduciary duties by personally making and/or causing the Company to make a series of materially false and misleading statements about Embark. Specifically, they willfully or recklessly made and/or caused the Company to make to the investing public certain statements that were materially false and misleading in the Registration Statement and documents related thereto, which contained material errors that required the Company to issue the Restatement for such financial statements to be in accordance with GAAP, and failed to disclose, *inter alia*, that: (1) the error had a negative impact on the Company's financials as of and for the three and six months ended June 30, 2021, or as of and for the three and nine months ended September 30, 2021; (2) treating this error as a restatement instead of a revision would result in the Company making adjustments to, and the reissuance of, the amounts reflected in the prior financial statements, as compared to making a revision only to the January 15, 2021 financial statements; (3) the Company violated GAAP relating to the accounting of temporary and permanent equity, principles which had been in practice since 2009; and (4) the Company failed to maintain adequate internal controls. As a result, Embark's public statements were materially false and misleading at all relevant times.

24.     In addition to this misconduct, the NGA Defendants breached their fiduciary duties by causing the Company to acquire Legacy Embark through the Merger, despite that: (1) Legacy Embark did not have patents or significant testing trucks; (2) Legacy Embark was working with autonomous driving technology, which is tremendously complex, and faced significant regulatory and technological challenges; and (3) Legacy Embark had an unproven business model with minimal operating experience. As such, the Merger was unfavorable to the NGA shareholders (the "Overpayment Misconduct").

25.     The Individual Defendants further made and/or caused the Company to make material accounting errors in its financial reports during the False & Misleading Statements Relevant Period and failed to correct and/or caused the Company to fail to correct these false and misleading statements and omissions of material fact until the Company was forced to restate its financial reports, rendering them personally liable to the Company for breaching their fiduciary duties.

26.     Additionally, in breach of their fiduciary duties, the Individual Defendants willfully or recklessly caused the Company to fail to maintain adequate internal controls. The Company's Amended

3Q21 admitted that "[t]he Company previously identified a material weakness in internal controls related to the accounting for warrants issued in connection with our initial public offering." As a result of the restatement described in the First Amendment on Form 10-Q/A, the Company had concluded there was a material weakness in the Company's internal control over financial reporting at the time the abovementioned financial statements were issued, and its disclosure controls and procedures were not effective at the time such financial statements were issued.

27.     The Individual Defendants' misconduct has subjected the Company, its current Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), its former CEO and CFO, and former and current members of its Board of Directors ("Board") to being named as defendants in a federal securities fraud class action lawsuit pending in the United States District Court for the Northern District of California (the "Securities Class Action").

28.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in fraud, the substantial likelihood of the directors' liability in this derivative action and Defendants Rodrigues, Hawwa, and Roberston's liability in the Securities Class Action, their being beholden to each other, their longstanding business and personal relationships with each other, and their not being disinterested and/or independent directors, a majority of Embark's Board cannot consider a demand to commence litigation against themselves and the other Individual Defendants on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)(1)), Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9), and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)).

30.     Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Securities Act and Exchange Act.

31.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

32.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

33.     The Court has personal jurisdiction over each of the Defendants because each Defendant is either a corporation with principal executive offices in this District and conducting business and maintaining operations in this District, or he or she is an individual who is a citizen of California or who has minimum contacts with this District to justify the exercise of jurisdiction over them.

34.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, Defendants have conducted business in this District, Defendants' actions have had an effect in this District, and Embark is headquartered in this District.

## PARTIES

### Plaintiff

35.     Plaintiff is a current shareholder of Embark common stock. Plaintiff has continuously held Embark common stock at all relevant times.

### Nominal Defendant Embark

36.     Embark is a Delaware corporation headquartered at 424 Townsend Street San Francisco, CA 94107 United States. Embark's shares trade on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "EMBK."

### Defendant Robertson

37.     Defendant Robertson has served on Embark's Board since November 2021. He is also a member of the Company's Audit Committee and Chair of the Nominating and the Corporate Governance Committee. Defendant Robertson served as NGA's CEO and a member of its Board until the Merger.

### Defendant Manget

38.      Defendant Manget served as NGA's CFO from before the start of the Relevant Period until the Merger. Manget also served as a member of NGA's Board from June 2020 to November 2021.

**Defendant Jarratt**

39.     Defendant Jarratt served on NGA's Board and as Chair of the Board from June 2020 to November 2021.

**Defendant Dalglish**

40.     Defendant Dalglish served on NGA's Board from June 2020 to November 2021.

**Defendant Schaefer**

41.     Defendant Schaefer served on NGA's Board from July 2020 to November 2021.

**Defendant Sparkes**

42.     Defendant Sparkes served on NGA's Board from June 2020 to November 2021.

**Defendant Rodrigues**

43.     Defendant Rodrigues is the CEO of Embark and has been serving on the Company's Board since November 2021. Previously, Defendant Rodrigues was also the Co-founder and the CEO of Legacy Embark.

44.     For the fiscal year ended December 31, 2021 (the "2021 Fiscal Year"), Defendant Rodrigues received $57,391,582 in total compensation from the Company. This included $180,000 in salary and $57,211,582 in stock awards.

**Defendant Hawwa**

45.     Defendant Hawwa has served as Embark's CFO since November 2021. Previously, he served as Legacy Embark's CFO from May 2021 until November 2021.

46.     For the 2021 Fiscal Year, Defendant Hawwa received $37,726,346 in total compensation from the Company. This included $228,846 in salary, $87,500 in bonus, and $37,410,000 in stock awards.

**Defendant Grady**

47.     Defendant Grady has served as a Company director since November 2021. He is also a member of the Board's Compensation Committee and Nominating and Corporate Governance Committee. Previously, Defendant Grady served on Legacy Embark's Board.

**Defendant Moak**

48.     Defendant Moak is Embark's Chief Technology Officer and has served as a Company director since November 2021. Previously, Defendant Moak co-founded Legacy Embark and served as its Chief Technology Officer.

49.     For the 2021 Fiscal Year, Defendant Moak received $30,985,652 in total compensation from the Company. This included $180,000 in salary and $30,805,652 in stock awards.

## THE INDIVIDUAL DEFENDANTS' MISCONDUCT

**Background of NGA and the Merger**

50.     A SPAC is a public shell company that is created to acquire private operating companies in order to make those private operating companies public. A SPAC IPO is often structured to offer investors a unit of securities consisting of shares of common stock and warrants.  A warrant is a contract that gives the holder the right to purchase from the company a certain number of additional shares of common stock in the future at a certain price, often a premium to the current stock price at the time the warrant is issued.

51.     In a SPAC IPO, investors put their capital into a listed company that does not conduct any commercial activities. Because the business the SPAC will be acquiring is unknown at the time of the IPO, the investors in the IPO are basically trusting the incorporators and management of the SPAC. A SPAC does not have operations or assets, aside from cash and limited investments. It offers securities for cash and places substantially all the offering proceeds into a trust or escrow account for future use in the acquisition of one or more private operating companies.

52.     The SPAC will identify target companies and aim to complete one or more business combination transactions, and afterwards, the SPAC will continue the operations of the acquired company or companies as a public company. A SPAC typically provides an 18-to-24-month period to identify and complete an initial business combination transaction.

53.     The incorporation documents or the equity agreements of a SPAC require the public shareholders of the SPAC to vote on a transaction. This additionally requires pre-merger regulatory filings with extensive financial reporting and disclosures. SPACs are regulated by the SEC and must follow

GAAP.

54.     According to GAAP guidelines, for an entity to determine whether to classify shares issued in the legal form of equity as liability instruments, it needs to consider if it represents (1) mandatorily redeemable financial instruments under ASC 480-10-25-14 or (2) unconditional obligations to deliver a variable number of equity shares that are liabilities under ASC 480-10-25-14. Because SPACs are regulated by the SEC and must register with the SEC, they need to consider that shares issued in the legal form of equity may require classification as temporary equity instruments under ASC 480-S99-3A if they are redeemable at: (i) a fixed or determinable price on a fixed or determinable date, (ii) the option of the holder, or, (iii) upon the occurrence of an event that is not solely within the control of the issuer.

55.     NGA, a blank check company, or SPAC had its initial public offering on January 15, 2021. It sold the units at $10 per unit, which resulted in $414 million in gross proceeds for the company.

56.     NGA filed with the SEC its prospectus in connection with the Company's IPO, where it represented that its management team has significant experience in identifying and acquiring a business. It also reassured the stockholders that NGA would conduct a thorough due diligence review, when evaluating prospective businesses, to determine if the business is worth acquiring or not. NGA's purpose was to acquire a business that had the ability to succeed if it was managed with NGA's team, network, and expertise.

57.     Legacy Embark was founded in 2016 as a startup autonomous vehicle company that builds software for autonomous trucks.

58.     On June 22, 2022, NGA filed a merger agreement with Legacy Embark. On June 23, 2022, NGA and Legacy Embark issued a joint press release where the Company ensured that it would work with Legacy Embark and that it would transition to a "great public company."

59.     NGA officially merged with Legacy Embark and changed its name to Embark Technology, Inc. on November 10, 2021. The shares of common stock are listed on the stock market under the symbol "EMBK." On November 18, 2021, the closing sale price of shares of Class A common stock was $7.17. The Company's warrants are listed on the stock market under the symbol "EMBKW" and on November 18, 2021, the closing sale price of the Company's warrants was $1.34.

**Preceding the IPO, the Company Misclassified Material Information in its Financial Reports**

60.    It is custom practice that a SPAC charter includes a provision which states that the SPAC cannot redeem public shares that would cause its net tangible assets to be less than $5,000,001 following such redemptions. The Company had the same provision in its charter. The Company's Registration Statement stated the following:

> Under the NGA Existing Charter, public holders of NGA public shares may elect to have their NGA public shares redeemed for cash at the applicable redemption price per share equal to the quotient obtained by dividing (a) the aggregate amount on deposit in the Trust Account as of two business days prior to the consummation of the Business Combination (including interest net of taxes payable), by (b) the total number of NGA public shares (the "Redemption Payment"); provided that NGA will not redeem any shares of NGA Common Stock to the extent that such redemption would result in NGA having net tangible assets (as determined in accordance with Rule 3a51-1(g) (1) of the Exchange Act) of less than $5,000,001. As of , 2021, the Redemption Payment would have amounted to approximately $10.00 per share.

61.    Notably, the Company admitted that it incorrectly classified the redeemable shares in its financial statements that were issued as of January 15, 2021, and March 31, 2021. The Company incorrectly classified the portion of its public shares as permanent equity so it could maintain stockholders' equity greater than $5,000,000. The Company could only complete its Merger if it had net tangible assets of at least $5,000,001 under the Company's charter, so it was necessary for the Company to maintain its stockholders' equity above $5,000,000. In other words, in order to continue to exist as a SPAC company, the Company incorrectly classified some of its public shares as "shares not subject to redemption."

62.    An entity can classify its securities as liability, permanent equity, or temporary equity. The classification on the balance sheet is significant because it impacts how the returns will be reflected on the Company's income statement. If the Company classifies it as a liability, then the return on liability is reflected in the net income. In contrast, if the Company classifies it as an equity, then the returns are generally reflected on equity, without having any impact on the net income. Further, if the securities are classified as temporary equity, it may impact an entity's reported EPS as adjustments to the redemption amount are often treated as dividends, which can affect an essential element when calculating EPS.

63.    EPS is a fundamental metric to determine the health and profitability of a corporation. EPS is one of the most important metrics investors check before investing into an entity. EPS is a financial

ratio that calculates how much profit the company is generating per share, and it informs the shareholders of how much money they would receive if the company were to be liquidated. The NGA Defendant's Misclassification Misconduct directly impacted the Company's EPS. Therefore, the Misclassification Misconduct concealed the Company's real EPS from the investing public.

64.     The NGA Defendants breached their fiduciary duties to the Company by causing it to engage in the Misclassification Misconduct, which misrepresented the true state of the Company's financial condition, and which remained undisclosed until the publication of the Restatement.

**The Overpayment Misconduct**

65.     NGA, as a blank check company, had no operations of its own, but instead aimed to combine with an operating company and take on that company's operations as its own. In such a business transaction, the operating company—here Legacy Embark— benefits from the combination by gaining access to investment without being burdened with the more formal requirements found in the IPO process. The SPAC—here NGA—benefits if the combination with the target company is prudent and enhances the value of the SPAC's shares.

66.     The Merger agreement filed on June 22, 2021 stated that NGA agreed to acquire Legacy Embark for a base purchase price of $4.25 billion. According to the Preliminary Proxy Statement, the terms of the merger agreement between NGA and Legacy Embark stated:

> [E]ach share of Embark common stock that is issued and outstanding immediately prior to the Effective Time (other than (i) any shares of Embark common stock subject to Embark Awards or warrants, (ii) any share of Embark common stock held in the treasury of Embark immediately prior to the Effective Time ("Treasury Shares"), which shall be canceled as part of the Business Combination, and (iii) any shares of Embark common stock electing to demand statutory appraisal rights due to the Business Combination ("Dissenting Shares")) (collectively, the "Exchange Shares"), will be canceled and converted into the right to receive the applicable portion of the number of shares of Embark Technology Common Stock equal to an exchange ratio equal to the quotient of (i) (a) the base purchase price of $4,250,000,000 (as adjusted pursuant to the terms of the Merger Agreement) *divided by* (b) $10.00 (the "Aggregate Merger Consideration") and the Aggregate Fully Diluted Company Common Shares (as defined in the Merger Agreement) (the "Exchange Ratio"). Each holder of Exchange Shares shall have its Exchange Shares converted into either (i) Embark Technology Class A Common Stock, or (ii) Embark Technology Class B Common Stock. The Merger closed on November 10, 2021, on the terms set forth in the merger agreement. NGA acquired all

of the outstanding equity interests of Legacy Embark for approximately $4.25 billion in aggregate consideration.

67.     These terms were unfavorable and unreasonable to NGA's shareholders because Legacy Embark encountered a lot of problems. For example, on January 6, 2022, the Bear Cave Report noted that "Embark appears to lack true economic substance," and that the "company holds no patents, has only a dozen or so test trucks, and may be more bark than bite." Furthermore, the Bear Cave Report stated that Embark Technology was based on puffery rather than actual substance.

68.     Such problems led Legacy Embark to be a less valuable acquisition than NGA's shareholders were led to believe. Thus, the NGA Defendants breached their fiduciary duties to the Company by causing it to acquire Legacy Embark on unfavorable terms.

69.     Legacy Embark held no patents, yet heavily relied on its trade secrets and technological methods to run its business. Legacy Embark also relied on the fact that it would keep competitors from reverse engineering its products. If Legacy Embark's trade secrets were disclosed in the future or if a third-party reverse engineered the technology Legacy Embark relied on, Legacy Embark would not have the right to prevent a third party from using it. After the Merger, on December 13, 2021, the prospectus was filed with respect to the related merger (the "Merger Prospectus"). The Merger Prospectus stated that "Embark plans in the future to apply for and obtain patents on its software and hardware products. To the extent Embark does so, Embark may need to engage in costly and time consuming activities to enforce such patents. Furthermore, there can be no assurance that any such patent applications will be granted or even that patents Embark does obtain will be sufficient to protect its intellectual property or will be issued in a timely fashion to deter infringement."

70.     Legacy Embark was in an industry that was rapidly evolving, and its business had a limited operating history and an unproven business model that faced significant challenges. The Merger Prospectus stated that "there can be no assurance that an alternative model adopted by its competitors in the autonomous vehicle space will not prove superior."

71.     Furthermore, autonomous driving technology is new and complex, and the industry faces significant regulatory and technological challenges. Legacy Embark's autonomous driving technology and related hardware and software could have had undetected defects, errors or bugs. If this was the case

in the future, the Company could incur significant development, repair, and replacement costs. In addition, it could expose the Company to future litigation costs such as breach of contract, product liability, and tort liability. The Merger Prospectus stated the following:

> Additionally, there may be undetected errors or defects especially as it introduces new systems or as new versions are released. These risks are particularly significant in the freight transport market given the high potential value of each load, as any such errors or defects could result in costly delays or losses, leading to the delay or prevention of the adoption of autonomous driving technology in trucks. There can be no assurance that Embark will be able to detect and fix any defects in its products prior to their sale to or installation for customers. Errors or defects could result in costly delays or losses, leading to the delay or prevention of the f the adoption of autonomous driving technology in trucks. There can be no assurance that Embark will be able to detect and fix any defects in its products prior to their sale to or installation for customers. Errors or defects in Embark's product may only be discovered after they have been tested, commercialized, and deployed.

72. The NGA Defendants knew, or should have known, that Legacy Embark's management team had minimal experience managing a public company and that most of the Board, and members of management after the Merger, were from Legacy Embark's Board and management team. Defendant Robertson was the only NGA member that ended up serving on the Board of Embark. The Merger Prospectus acknowledged:

> Legacy Embark may be subject to risks associated with potential future strategic alliances, partnerships, investments or acquisitions, all of which could divert management's attention, result in Embark incurring significant or acquisitions, all of which could divert management's attention, result in Embark incurring significant costs or operating difficulties and dilution to its stockholders, disrupt its operations and adversely affect its business, results of operations or financial condition.

73. In light of these issues, the NGA Defendants breached their fiduciary duties to the Company by causing NGA to merge with Legacy Embark on terms that were unfavorable to the Company and its pre-Merger shareholders.

74. Moreover, it was highly likely that if Legacy Embark's autonomous vehicle technologies failed to perform as expected, were inferior to those of competitors, or were less safe or higher-priced than those of competitors or other non-autonomous vehicles, Embark's financial performance and prospects would be adversely affected in the future.

75. After conducting sufficient due diligence, the NGA Defendants were required to know the

state of Legacy Embark prior to the Merger. Despite being aware of the poor state of Legacy Embark and its elevated risk of future issues, the NGA Defendants nevertheless agreed to the Merger.

76.    In breach of their fiduciary duties to the Company, the Individual Defendants engaged in the Overpayment Misconduct by causing NGA to acquire Legacy Embark on unfavorable terms to the Company's shareholders despite that, *inter alia*: (1) Legacy Embark did not have patents or significant testing trucks; (2) Legacy Embark was working with autonomous driving technology, which is tremendously complex, and faced significant regulatory and technological challenges; and (3) Legacy Embark had an unproven business model with minimal operating experience.

**False and Misleading Statements**

***July 2, 2021, Registration Statement, Proxy Statement, and Prospectus***

77.    The Company filed its Registration Statement on July 2, 2021, which was signed by Defendants Robertson, Manget, Dalglish, Jarratt, Schaefer, and Sparkes.

78.    The Registration Statement also included a Preliminary Proxy Statement and a prospectus. Defendants Robertson, Manget, Dalglish, Jarratt, Schaefer, and Sparkes solicited the Preliminary Proxy Statement filed pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.

79.    On August 31, 2021, September 23, 2021 and October 10, 2021, the Company filed amendments to its Registration Statement (the "Amendments to the Form S-4").

80.    Regarding the Company's Code of Business Conduct and Ethics (the "Code of Ethics"), the Preliminary Proxy Statement stated, "NGA has adopted a code of ethics that applies to all of its executive officers, directors, and employees. The code of ethics codifies the business and ethical principles that govern all aspects of its business." The Preliminary Proxy Statement also stated:

> Embark Technology will have a code of ethics that applies to all of its executive officers, directors and employees, including its principal executive officer, principal financial officer, principal accounting officer or controller or persons performing similar functions. The code of ethics will be available on Embark Technology's website, http://Embark.com/investors. Embark Technology intends to make any legally required disclosures regarding amendments to, or waivers of, provisions of its code of ethics on its website rather than by filing a Current Report on Form 8-K.

81.    The Preliminary Proxy Statement introduced the proposal for the Company's Merger with

Legacy Embark, stating:

> Proposal No. 1 — The Business Combination Proposal — to consider and vote upon a proposal to approve and adopt the Agreement and Plan of Merger, dated as of June 22, 2021 (the "Merger Agreement"), by and among NGA, NGAB Merger Sub Inc. ("Merger Sub"), a Delaware corporation and wholly owned subsidiary of NGA and Embark Trucks Inc. ("Embark"), a Delaware corporation, a copy of which is attached to this proxy statement/prospectus statement as Annex A. The Merger Agreement provides for, among other things, the merger of Merger Sub with and into Embark (the "Merger"), with Embark surviving the Merger as a wholly owned subsidiary of NGA (following such date, Embark Technology), in accordance with the terms and subject to the conditions of the Merger Agreement as more fully described elsewhere in this proxy statement/prospectus (the "Business Combination Proposal");

82.     In addition, regarding the vote for the Merger, the Preliminary Proxy Statement stated:

> After careful consideration, the board of directors of NGA has unanimously approved the Business Combination and unanimously recommends that stockholders vote "FOR" adoption of the Merger Agreement, and approval of the transactions contemplated thereby, including the Business Combination, and "FOR" all other proposals presented to NGA's stockholders in this proxy statement/prospectus. When you consider the recommendation of these proposals by the board of directors of NGA, you should keep in mind that NGA's directors and officers have interests in the Business Combination that may conflict with your interests as a stockholder. See the section entitled "Proposal No. 1—The Business Combination Proposal — Interests of Certain Persons in the Business Combination" in this proxy statement/prospectus for a further discussion of these considerations.

83.     The Preliminary Proxy Statement noted the following, regarding the redeemable public shares: "In addition, pursuant to the NGA Organizational Documents, in no event will NGA redeem public shares in an amount that would cause NGA's net tangible assets (as determined in accordance with Rule 3a51-1(g)(1) of the Exchange Act) to be less than $5,000,001."

84.     Defendants Robertson, Manget, Dalglish, Jarratt, Schaefer, and Sparkes caused the Preliminary Proxy Statement to be false and misleading by failing to disclose that there was noncompliance with the Code of Ethics. Such noncompliance is shown not only through the accounting errors discussed herein, but also by the NGA Defendants' engagement in the Overpayment Misconduct and solicitation of the Merger without conducting sufficient due diligence.

85.     In addition, Defendants Robertson, Manget, Dalglish, Jarratt, Schaefer, and Sparkes caused the Preliminary Proxy Statement to be materially false and misleading, and failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, the Preliminary Proxy

Statement contained material errors that required the Company to issue the Restatement for such financial statements to be in accordance with GAAP and failed to disclose, *inter alia*, that: (1) the error had a negative impact on the Company's financials as of and for the three and six months ended June 30, 2021, or as of and for the three and nine months ended September 30, 2021; (2) treating this error as a restatement instead of a revision would result in the Company making adjustments to, and the reissuance of, the amounts reflected in the prior financial statements, as compared to making a revision only to the January 15, 2021 financial statements; (3) the Company violated GAAP relating to the accounting of temporary and permanent equity, principles which had been in practice since 2009; and (4) the Company failed to maintain adequate internal controls. As a result, Embark's public statements were materially false and misleading at all relevant times.

86.     Furthermore, the Company failed to correct the misleading statements and omissions in each of the Amendments to the Form S-4.

### *October 19, 2021, Definitive Proxy Statement/Prospectus*

87.     The Company filed the definitive proxy statement/prospectus on Form 424B3 with the SEC ("Definitive Proxy Statement") on October 19, 2021 in regard to the Merger, as the SEC concluded that the redeemable common shares in SPACs should all be recorded as temporary equity. Defendant Robertson and Rodrigues signed the Definitive Proxy Statement.

88.     The Definitive Proxy Statement and the Amendments to the Form S-4 falsely stated that NGA's condensed statement of changes in stockholders' equity at three and six months ended June 30, 2021 had a total stockholder's equity balance of $5,000,005 as of March 31, 2021. However, the actual balance was ($37,455,393), which was restated after adjusting the carrying amount of stockholders' equity and reducing it by ($42,455,398).

89.     The Definitive Proxy Statement and the Amendments to the Form S-4 falsely stated that NGA's condensed statement of changes in stockholders' equity at three and six months ended June 30, 2021 had a total stockholders' equity of $371,629,911 for the sale of 41,400,000 units, net of underwriting discounts. However, the actual total stockholders' equity was $0, which was restated after adjusting the carrying value and reducing it by ($371,629,911).

90.     The Definitive Proxy Statement and the Amendments to the Form S-4 falsely stated that NGA's condensed statement of changes in stockholders' equity at three and six months ended June 30, 2021 had a total stockholders' equity of ($365,248,633) for the initial value of common stock subject to redemption. However, the actual value was $0, which was restated after making an adjustment of ($365,248,633).

91.     The Definitive Proxy Statement and the Amendments to the Form S-4 falsely stated that NGA's condensed statement of changes in stockholders' equity at three and six months ended June 30, 2021 had a total stockholder's equity of ($6,295,969) for the change in value of common stock subject to redemption during the first quarter of 2021 for the initial value of common stock subject to redemption. However, the actual value was $0, which was restated as there was no need for such an adjustment.

92.     The Definitive Proxy Statement and the Amendments to the Form S-4 did not note the accretion for common stock to redemption amount as of March 31, 2021 in the NGA's Condensed Statement of Changes in Stockholders' Equity at three and six months ended June 30, 2021. Notably, the Company's accounting errors required the Company to adjust this period, and it did so in the Restatement by adjusting the amount to its new balance of ($42,359,126).

93.     The Definitive Proxy Statement and the Amendments to the Form S-4 falsely stated that NGA's condensed statement of changes in stockholders' equity at three and six months ended June 30, 2021 had a total stockholder's equity of ($42,455,398) for the change in value of common stock subject to redemption during the second quarter of 2021. However, the actual value was $0, which was restated as there was no need for such an adjustment.

94.     The Definitive Proxy Statement and the Amendments to the Form S-4 falsely stated that NGA's Condensed Statement of Cash Flows for the six months ended June 30, 2021 had $365,248,633 in initial classification of common stock subject to possible redemption. However, the actual value was $414,000,000, after it was adjusted by the carrying value by $48,751,367.

95.     The Definitive Proxy Statement and the Amendments to the Form S-4 falsely stated that NGA's Condensed Statement of Cash Flows for the six months ended June 30, 2021 had $48,751,367 change in value of common stock subject to redemption. However, the actual value was $0 after adjusting

it for ($48,71,367).

96.    In addition, the Definitive Proxy Statement and the Amendments to the Form S-4 falsely stated that "basic and diluted net income per share, Common Stock subject to redemption" as of and for the three and six months ended June 30, 2021 in NGA's Condensed Statements of Operations were ($0.84) and ($0.51), respectively. This was incorrect as the Company fixed it in the Restatement to ($0.24) and ($0.15), respectively.

97.    The Definitive Proxy Statement and the Amendments to the Form S-4 falsely stated that "basic and diluted weighted average shares outstanding, Common stock subject to redemption" as of and for the three and six months ended June 30, 2021 in NGA's Condensed Statements of Operations were 37,153,752 and 61,945,851, respectively. However, the actual values were 41,400,000 and 37,969,061, respectively.

98.    The Definitive Proxy Statement and the Amendments to the Form S-4 falsely stated that "basic and diluted net income per share, Non-redeemable common stock" as of and for the three and six months ended June 30, 2021 in NGA's Condensed Statements of Operations were ($0.84) and ($0.51), respectively. However, the actual restated amounts were ($0.24) and ($0.15), respectively.

99.    The Definitive Proxy Statement and the Amendments to the Form S-4 falsely stated that "basic and diluted weighted average shares outstanding, Non-redeemable common stock" as of and for the three and six months ended June 30, 2021 in NGA's Condensed Statements of Operations were 14,596,248 and 14,393,060, respectively. However, the actual restated amounts were 10,350,000 and 10,238,122, respectively.

100.    These statements were quantitatively false and/or misleading and failed to disclose, *inter alia*, that: (1) the error had a negative impact on the Company's financials as of and for the three and six months ended June 30, 2021, or as of and for the three and nine months ended September 30, 2021; (2) treating this error as a restatement instead of a revision would result in the Company making adjustments to, and the reissuance of, the amounts reflected in the prior financial statements, as compared to making a revision only to the January 15, 2021 financial statements; (3) the Company violated GAAP relating to the accounting of temporary and permanent equity, principles which had been in practice since 2009; and

(4) the Company failed to maintain adequate internal controls. As a result, Embark's public statements were materially false and misleading at all relevant times.

101.    The Definitive Proxy Statement was also false and misleading for the same reasons discussed previously related to the Preliminary Proxy Statement, as both of the statements contained the same information.

102.    The Company's condensed financial statements as of June 30, 2020 were included in the Definitive Proxy Statement and in the Amendments to the Form S-4 as follows:

**NORTHERN GENESIS ACQUISITION CORP. II**
**CONDENSED BALANCE SHEETS**

| | June 30, 2021 | December 31, 2020 |
|---|---|---|
| | (Unaudited) | |
| **ASSETS** | | |
| Current assets | | |
| Cash | $    296,271 | $         — |
| Prepaid expenses and other current assets | 208,263 | — |
| Total Current Assets | 504,534 | — |
| Deferred offering costs | — | 249,917 |
| Marketable securities held in Trust Account | 414,023,366 | — |
| TOTAL ASSETS | $414,527,900 | $249,917 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities | | |
| Accrued expenses | $     640,600 | $    1,450 |
| Accrued offering costs | — | 107,000 |
| Promissory note — related party | — | 117,917 |
| Total Current Liabilities | 640,600 | 226,367 |
| FPA liability | 1,106,667 | — |
| Warrant liability | 34,956,801 | — |
| Deferred underwriting fee payable | 14,490,000 | — |
| Total Liabilities | 51,194,068 | 226,367 |
| **Commitments** | | |
| Common stock subject to possible redemption 41,400,000 and -0- shares at redemption value at June 30, 2021 and December 31, 2020, respectively | 414,000,000 | |
| **Stockholders' Equity** | | |
| Preferred stock, $0.0001 par value; 1,000,000 shares authorized; none issued or outstanding | — | — |
| Common stock, $0.0001 par value; 100,000,000 shares authorized; 15,805,951 and 10,350,000 shares issued and outstanding (excluding 35,944,049 and no shares subject to possible redemption) at June 30, 2021 and December 31, 2020, respectively | 1,035 | 1,035 |
| Additional paid-in capital | — | 23,965 |
| Accumulated deficit | (50,667,203) | (1,450) |
| Total Stockholders' Equity | (50,666,168) | 23,550 |
| TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY | $414,527,900 | $249,917 |

**NORTHERN GENESIS ACQUISITION CORP. II**
**CONDENSED STATEMENTS OF OPERATIONS**
**(UNAUDITED)**

| | Three Months Ended June 30, 2021 | Six Months Ended June 30, 2021 |
|---|---|---|
| Operating and formation costs | $ 1,261,199 | $ 2,873,957 |
| **Loss from operations** | (1,261,199) | (2,873,957) |
| Other expense: | | |
| Change in fair value of warrant liability | (10,857,934) | (4,373,334) |
| Change in fair value of FPA liability | (140,000) | (140,000) |
| Loss on initial issuance of private warrants | — | (267,467) |
| Offering costs allocated to warrant and FPA liabilities | — | (1,148,289) |
| Interest earned on marketable securities held in Trust Account | 15,025 | 23,366 |
| Other expense, net | (10,982,909) | (5,905,724) |
| Loss before income taxes | (12,244,108) | (7,363,925) |
| Benefit (provision) for income taxes | — | — |
| **Net loss** | $(12,244,108) | $(7,363,925) |
| Basic and diluted weighted average shares outstanding, Common stock subject to redemption | 37,153,752 | 61,945,851 |
| **Basic and diluted net income per share, Common stock subject to redemption** | $       0.00 | $       0.00 |
| Basic and diluted weighted average shares outstanding, Non-redeemable common stock | 14,596,248 | 14,393,060 |
| **Basic and diluted net income per share, Non-redeemable common stock** | $      (0.84) | $      (0.51) |

**NORTHERN GENESIS ACQUISITION CORP. II**
**CONDENSED STATEMENT OF CHANGES IN STOCKHOLDERS' EQUITY**
**THREE AND SIX MONTHS ENDED JUNE 30, 2021**
**(UNAUDITED)**

| | Common Stock | | Additional Paid-in Capital | Retained Earnings / (Accumulated Deficit) | Total Stockholders' Equity |
|---|---|---|---|---|---|
| | Shares | Amount | | | |
| **Balance — January 1, 2021** | 10,350,000 | $ 1,035 | $     23,965 | $     (1,450) | $     23,550 |
| Sale of 41,400,000 Units, net of underwriting discounts | 41,400,000 | 4,140 | 371,625,771 | — | 371,629,911 |
| Sale of 6,686,667 Private Placement Warrants | — | — | 10,963 | | 10,963 |
| Common stock subject to possible redemption | (36,524,863) | (3,652) | (365,244,981) | — | (365,248,633) |
| Change in value of common stock subject to redemption | (628,889) | (63) | (6,295,906) | — | (6,295,969) |
| Net Income | — | — | — | 4,880,183 | 4,880,183 |
| **Balance — March 31, 2021** | 14,596,248 | $ 1,460 | $   119,812 | $ 4,878,733 | $ 5,000,005 |
| Change in value of common stock subject to redemption | (4,246,248) | (425) | (119,812) | (42,335,161) | (42,455,398) |
| Initial classification of FPA liability | — | — | — | (966,667) | (966,667) |
| Net Loss | — | — | — | (12,244,108) | (12,244,108) |
| **Balance — June 30, 2021** | 10,350,000 | $ 1,035 | $        — | $(50,667,203) | $ (50,666,168) |

Verified Shareholder Derivative Complaint

1

2

3

**NORTHERN GENESIS ACQUISITION CORP. II**
**CONDENSED STATEMENT OF CASH FLOWS**
**SIX MONTHS ENDED JUNE 30, 2021**
**(UNAUDITED)**

| | |
|---|---:|
| **Cash Flows from Operating Activities:** | |
| Net loss | $ (7,363,925) |
| Adjustments to reconcile net loss to net cash used in operating activities: | |
| Interest earned on marketable securities held in Trust Account | (23,366) |
| Changes in fair value of warrant liability | 4,373,334 |
| Change in fair value of FPA liability | 140,000 |
| Loss on initial issuance of private warrants | 267,467 |
| Offering costs allocable to warrant liabilities | 1,148,289 |
| Changes in operating assets and liabilities: | |
| Prepaid expenses and other current assets | (208,263) |
| Accrued expenses | 639,150 |
| **Net cash used in operating activities** | **(1,027,314)** |
| **Cash Flows from Investing Activities:** | |
| Investment of cash in Trust Account | (414,000,000) |
| **Net cash used in investing activities** | **(414,000,000)** |
| **Cash Flows from Financing Activities:** | |
| Proceeds from sale of Units, net of underwriting discounts paid | 405,720,000 |
| Proceeds from sale of Private Placement Warrants | 10,030,000 |
| Repayment of promissory note — related party | (117,917) |
| Payment of offering costs | (308,498) |
| **Net cash provided by financing activities** | **415,323,585** |
| **Net Change in Cash** | **296,271** |
| Cash — Beginning of period | — |
| **Cash — End of period** | **$   296,271** |
| **Non-Cash investing and financing activities:** | |
| Initial classification of common stock subject to possible redemption | $ 365,248,633 |
| Change in value of common stock subject to possible redemption | $   48,751,367 |
| Initial Classification of Warrant Liabilities | $   30,583,467 |
| Deferred underwriting fee payable | $   14,490,000 |

## The Truth Begins to Emerge

103.   On November 9, 2021, the Company held a special meeting in which the NGA shareholders approved the Merger.

***November 10, 2021, Form 10-Q***

104.   The Company filed the 3Q21 on November 10, 2021. The 3Q21 was signed by Defendants Robertson and Manget. It also contained SOX certifications signed by Defendants Robertson and Manget attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company,

its officers, or its directors.

105.    The Company admitted to the accounting error related to temporary equity versus permanent equity in the 3Q21, as Note 2 of the 3Q21 disclosed:

NOTE 2. REVISION OF PREVIOUSLY ISSUED FINANCIAL STATEMENTS

In connection with the preparation of the Company's financial statements as of September 30, 2021, management identified errors made in its historical financial statements where, at the closing of the Company's Initial Public Offering, the Company improperly valued its Common stock subject to possible redemption. The Company previously determined the Common stock subject to possible redemption to be equal to the redemption value of $10.00 per share of Common stock while also taking into consideration a redemption cannot result in net tangible assets being less than $5,000,001. Management determined that the Common stock issued during the Initial Public Offering can be redeemed or become redeemable subject to the occurrence of future events considered outside the Company's control. Therefore, management concluded that the redemption value should include all shares of Common stock subject to possible redemption, resulting in the Common stock subject to possible redemption being equal to their redemption value. As a result, management has noted a reclassification error related to temporary equity and permanent equity. This resulted in an adjustment to the initial carrying value of the Common stock subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and Common stock. However, the reclassification error was significantly major than what the company presented it to be.

106.    The Company was required to disclose more than what it actually disclosed in the 3Q21. For example, the Company failed to disclose the impact of the error on the Company's financials as of and for the three and six months ended June 30, 2021, or on the Company's financials as of for the three and nine months ended September 30, 2021.

107.    Moreover, the disclosure did not admit that the error would result in the Company revising the amounts in its previous financial statements, compared to making a revision only to the January 15, 2021 financial statement. The disclosure also did not reveal that the Company violated GAAP, which were in practice since 2009 and should have been adhered to by the Company.

108.    The statements referenced in ¶¶ 80-106 were materially false and misleading because there were material errors that required the Company to issue the Restatement for such financial statements to be in accordance with GAAP and the Individual Defendants failed to disclose, *inter alia*, that: (1) the error had a negative impact on the Company's financials as of and for the three and six months ended June 30, 2021, or as of and for the three and nine months ended September 30, 2021; (2) treating this error as a

restatement instead of a revision would result in the Company making adjustments to, and the reissuance of, the amounts reflected in the prior financial statements, as compared to making a revision only to the January 15, 2021 financial statements; (3) the Company violated GAAP relating to the accounting of temporary and permanent equity, principles which had been in practice since 2009; and (4) the Company failed to maintain adequate internal controls. As a result, Embark's public statements were materially false and misleading at all relevant times.

### *November 17, 2021, Form 8-K*

109.    The Company filed the November 2021 8-K on November 17, 2021. The November 2021 8-K admitted that the Company's "audited balance sheet as of January 15, 2021 and the Company's unaudited financial statements as of March 31, 2021 and for the three months ended March 31, 2021 should no longer be relied upon." The Company disclosed that those statements were unreliable due to the reclassification of the Company's public shares as temporary equity. The November 2021 8-K stated:

Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.

On November 12, 2021, the management of Embark Technology, Inc. … became aware that the Chief Accountant's Office of the Securities and Exchange Commission's ("SEC") Division of Corporation Finance had determined that the redeemable common shares should all be recorded as temporary equity…. The Company had previously classified a portion of the Public Shares in permanent equity because the Company's amended and restated certificate of incorporation provided that the Company will not redeem the Public Shares in an amount that would cause its net tangible assets to be less than $5,000,001. Notwithstanding the provision in the amended and restated certificate of incorporation requiring a minimum net tangible asset amount, based on the re-evaluation discussed above, the Company's management determined that, in accordance with the ASC 480, redemption provisions not solely within the control of the Company would require common stock subject to redemption to be classified outside of permanent equity and therefore all of the Public Shares subject to redemption should be classified outside of permanent equity.

On November 17, 2021, the audit committee of the board of directors of the Company concluded, after discussion with the Company's management, that (i) the Company's audited balance sheet as of January 15, 2021 included as Exhibit 99.1 to the Company's Current Report on Form 8-K filed with the SEC on January 22, 2021 and (ii) the Company's unaudited financial statements as of March 31, 2021 and for the three months ended March 31, 2021 contained in the Company's Quarterly Report on Form 10-Q filed with the SEC on May 26, 2021, should no longer be relied upon due to the reclassification of all of the Company's Public Shares as temporary equity.

The tables below present sections of (i) the balance sheets as of January 15, 2021 and March 31, 2021, (ii) the statement of operations for the three months ended March 31, 2021 and (iii) the statement of cash flows for the three months ended March 31, 2021, in each case, as reported, adjusted for the change in accounting treatment and the restated financial statements reflecting those adjustments.

**Balance Sheet as of January 15, 2021**

| | As Reported | Adjustments | Restated |
|---|---|---|---|
| Shares Subject to Redemption | $ 365,248,633 | $ 48,751,367 | $ 414,000,000 |
| Class A Common Stock | 1,523 | (488) | 1,035 |
| Additional Paid in Capital | 6,415,718 | (6,415,718) | |
| (Accumulated Deficit) Retained Earnings | (1,417,236) | (42,335,161) | (43,752,397) |
| Total Stockholders' Equity | 5,000,005 | (48,751,367) | (43,751,362) |
| Number of shares subject to redemption | 36,524,863 | 4,875,137 | 41,400,000 |

2

**Balance Sheet as of March 31, 2021**

| | As Reported | Adjustments | Restated |
|---|---|---|---|
| Shares Subject to Redemption | $ 371,544,602 | $ 42,455,398 | $ 414,000,000 |
| Class A Common Stock | 1,460 | (425) | 1,035 |
| Additional Paid in Capital | 119,812 | (119,812) | |
| (Accumulated Deficit) Retained Earnings | 4,878,733 | (42,335,161) | (37,456,428) |
| Total Stockholders' Equity | 5,000,005 | (42,455,398) | (37,455,393) |
| Number of shares subject to redemption | 37,153,752 | 4,246,248 | 41,400,000 |

**Statement of Operations for the three months March 31, 2021**

| | As Reported | Adjustments | Restated |
|---|---|---|---|
| Weighted average shares outstanding - redeemable | 36,524,863 | (2,024,863) | 34,500,000 |
| Basic and Diluted EPS - redeemable | $ - | $ 0.11 | $ 0.11 |
| Weighted average shares outstanding - non-redeemable | 14,187,614 | (4,062,614) | 10,125,000 |
| Basic and Diluted EPS - non-redeemable | $ 0.34 | $ (0.23) | $ 0.11 |

**Statement of Cash Flows for the three months March 31, 2021**

| | As Reported | Adjustments | Restated |
|---|---|---|---|
| Initial classification of common stock subject to redemption | $ 365,248,633 | $ 48,751,367 | $ 414,000,000 |
| Change in value of common stock subject to redemption | 6,295,969 | (6,295,969) | |

The Company reflected the adjustments to the Company's financial statements as of January 15, 2021 in Note 2 of the financial statements included in the Company's Quarterly Report on Form 10-Q for the period ended September 30, 2021, filed with the SEC on November 10, 2021 (the "Q3 10-Q"). *The Company referred to these adjustments as a 'revision' in the Company's Q3 10-Q, however, these adjustments should have been identified as a 'restatement' of the previously issued audited balance sheet.* Notwithstanding the misidentification, management believes that the financial statements included in the Q3 10-Q present fairly in all material respects the Company's financial position, results of operations and cash flows for the periods presented.

The Company's management has concluded that at the time the above-mentioned financial statements were issued, in light of the classification error described above, *a material weakness existed in the Company's internal control over financial reporting with respect to its analysis of complex financial instruments, including the classification of redeemable common stock as temporary equity.* However, the errors relate to the pre-business combination special purpose acquisition company and its financial statements and the Company's management believes that these errors have no material effect on the post-business combination company's financial statements.

110.   As a result of this news, Embark's share price fell to $7.17 per share at the close of November 18, 2021, falling $0.72 per share (or approximately 9%).[3]

---

[3] On August 16, 2022, Embark Technology announced a 1-for-20 reverse stock split. Embark's Class A

26

## The Truth Emerges

### November 24, 2021, Form 10-Q

111.   On November 24, 2021, the Company filed its Amended 3Q21. The Amended 3Q21 was signed by Defendant Rodrigues and Hawwa. It also contained SOX certifications signed by Defendants Rodrigues and Hawwa attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

112.   The Company disclosed, in the Amended 3Q21, that it issued the Restatement for its condensed financial statements as of January 15, 2021, as of and for the three months ended March 31, 2021, as of and for the three and six months ended June 30, 2021, and for three and nine months ended September 30, 2021. The Restatement was due to the Company's accounting error made in classifying the redeemable common stock. The Amended 3Q21 stated:

> The Company is filing this First Amendment on Form 10-Q/A to reflect a restatement of the Company's condensed financial statements as of January 15, 2021, as of and for the three months ended March 31, 2021, as of and for the three and six months ended June 30, 2021 and for the three and nine months ended September 30, 2021 to correct errors in the Company's classification of public shares as permanent equity *as further described* below.
>
> ***
>
> **Background of Restatement**
>
> *In the Company's previously issued financial statements as of January 15, 2021 and March 31, 2021, a portion of the public shares were classified as permanent equity to maintain stockholders' equity greater than $5,000,000 on the basis that the Company could consummate its initial business combination only if the Company has net tangible assets of at least $5,000,001 under the Company's charter. Thus, the Company can only complete a merger and continue to exist as a public company if there are sufficient public shares that do not redeem at the merger and so it was deemed appropriate to classify the portion of its public shares required to keep its stockholders' equity above the $5,000,000 threshold as "shares not subject to redemption."*
>
> However, in light of recent comment letters issued by the Securities & Exchange Commission ("SEC") to several special purpose acquisition companies, management re-evaluated the Company's application of ASC 480-10-99 to its accounting classification of

shares began to trade on a split-adjusted basis when the market opened on August 17, 2022. On the close of November 18, 2022, the split adjusted price per share was $143.40 and this was approximately $14 per share lower than the previous close.

public shares. Upon re-evaluation, management determined that the public shares include certain provisions that require classification of the public shares as temporary equity regardless of the minimum net tangible asset required by the Company to complete its initial business combination.

**The Company's management and the audit committee of the Company's Board of Directors concluded that it is appropriate to restate all of the Company's previously issued financial statements to report all public shares as temporary equity as of January 15, 2021, as of and for the three months ended March 31, 2021, as of and for the three and six months ended June 30, 2021 and for the three and nine months ended September 30, 2021.**

\*\*\*

**Refer to Note 2, Restatement of Previously Issued Financial Statements of this Form 10-Q/A for additional information and for the summary of the accounting impacts of these adjustments to the Company's condensed financial statements** as of and for the three months ended March 31, 2021, **as of and for the three and six months ended June 30, 2021** and for the three and nine months ended September 30, 2021.

The Company previously identified a material weakness in internal controls related to the accounting for warrants issued in connection with our initial public offering. **As a result of the restatement described in this First Amendment on Form 10-Q/A, the Company has concluded there was a material weakness in the Company's internal control over financial reporting at the time the abovementioned financial statements were issued, and its disclosure controls and procedures were not effective at the time the abovementioned financial statements were issued**.

113.    Additional information regarding the Restatement was included in Note 2 to the Condensed Consolidated Financial Statements for September 30, 2021, which stated:

NOTE     2.     RESTATEMENT     O F     PREVIOUSLY     ISSUED     FINANCIAL STATEMENTS

In connection with the preparation of the Company's financial statements as of September 30, 2021 in its Original Form 10-Q, the Company concluded it should restate its financial statements to classify all Public Shares in temporary equity. In accordance with ASC 480, paragraph 10-S99, redemption provisions not solely within the control of the Company require common stock subject to possible redemption to be classified outside or permanent equity. The Company previously determined the common stock subject to possible redemption to be equal to the redemption value of $10.00 per share of common stock while also taking into consideration a redemption cannot result in net tangible assets being less than $5,000,001. **Previously, the Company did not consider redeemable shares classified as temporary equity as part of net tangible assets. Effective with these financial statements, the Company revised this interpretation to include temporary equity in net tangible assets. Accordingly, effective with this filing, the Company presents all redeemable common stock as temporary equity. Additionally, the Company in its Original Form 10-Q referred to these adjustments as a 'revision', however, these**

*adjustments should have been identified as a 'restatement' of the previously issued financial statements.*

As a result, management has noted a reclassification adjustment related to temporary equity and permanent equity. This resulted in an adjustment to the initial carrying value of the common stock subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and common stock.

114.   The Restatement's impact on the Company's financial statements can be discerned from the following table:

| | As Previously Reported | Adjustment | As Restated |
|---|---|---|---|
| **Balance Sheet as at January 15, 2021** | | | |
| Common stock subject to redemption | $ 365,248,533 | $ 48,751,367 | $ 414,000,000 |
| Common stock shares | $ 1,523 | $ (488) | $ 1,035 |
| Additional paid-in capital | $ 6,415,718 | $ (6,415,718) | $ — |
| Accumulated deficit | $ (1,417,236) | $ (42,335,161) | $ (43,752,397) |
| Total Stockholders' Equity (Deficit) | $ 5,000,005 | $ (48,751,367) | $ (43,751,362) |
| **Balance Sheet as at March 31, 2021** | | | |
| Common stock subject to possible redemption | $ 371,544,602 | $ 42,455,398 | $ 414,000,000 |
| Common stock shares | $ 1,460 | $ (425) | $ 1,035 |
| Additional paid-in capital | $ 119,812 | $ (119,812) | $ — |
| Retained Earnings (Accumulated deficit) | $ 4,878,733 | $ (42,335,161) | $ (37,456,428) |
| Total Stockholders' Equity (Deficit) | $ 5,000,005 | $ (42,455,398) | $ (37,455,393) |

| | As Previously Reported | Adjustment | As Restated |
|---|---|---|---|
| **Statement of Cash Flows for the Three Months Ended March 31, 2021** | | | |
| Initial classification of common stock subject to possible redemption | $ 365,248,633 | $ 48,751,367 | $ 414,000,000 |
| Change in value of common stock subject to possible redemption | $ 6,295,969 | $ (6,295,969) | $ |
| **Statement of Cash Flows for the Six Months Ended June 30, 2021** | | | |
| Initial classification of common stock subject to possible redemption | $ 365,248,633 | $ 48,751,367 | $ 414,000,000 |
| Change in value of common stock subject to possible redemption | $ 48,751,367 | $ (48,751,367) | $ |

| | As Previously Reported | Adjustment | As Restated |
|---|---|---|---|
| **Condensed Consolidated Statement of Changes in Stockholders' Equity (Deficit) March 31, 2021** | | | |
| Sale of 41,400,000 Units, net of underwriting discounts | $ 371,629,911 | $ (371,629,911) | $ |
| Initial value of common stock subject to possible redemption at IPO date | (365,248,633) | 365,248,633 | |
| Change in value of common stock subject to possible redemption | 6,295,969 | (6,295,969) | |
| Accretion for common stock to redemption amount | | (42,359,126) | (42,359,126) |
| Total stockholders' equity (deficit) | 5,000,005 | (42,455,398) | (37,455,393) |
| **Condensed Consolidated Statement of Changes in Stockholders' Equity (Deficit) June 30, 2021** | | | |
| Change in value of common stock subject to redemption | 42,455,398 | (42,455,398) | |
| Total stockholders' equity | (50,666,168) | | (50,666,168) |

In connection with the change in presentation for common stock subject to redemption, the Company also restated its income (loss) per share. The impact of this restatement on the Company's financial statement is reflected in the following table:

| | Basic and diluted weighted average shares outstanding, Class A common stock subject to possible redemption | Basic and diluted net loss per share, Class A common stock | Basic and diluted weighted average shares outstanding, Class B common stock subject to possible redemption | Basic and diluted net loss per share, Class B common stock |
|---|---|---|---|---|
| **For the three months ended, March 31, 2021** | | | | |
| As Previously Reported | 36,524,863 | $ — | 14,187,614 | $ 0.34 |
| As Restated | 34,500,000 | $ 0.11 | 10,125,000 | $ 0.11 |
| **For the three months ended, June 30, 2021** | | | | |
| As Previously Reported | 37,153,752 | $ — | 14,596,248 | $ (0.84) |
| As Restated | 41,400,000 | $ (0.24) | 10,350,000 | $ (0.24) |
| **For the six months ended, June 30, 2021** | | | | |
| As Previously Reported | 61,945,851 | $ — | 14,393,060 | $ (0.51) |
| As Restated | 37,969,061 | $ (0.15) | 10,238,122 | $ (0.15) |
| **For the three months ended, September 30, 2021** | | | | |
| As Previously Reported | 51,750,000 | $ 0.22 | — | $ — |
| As Restated | 41,400,000 | $ 0.22 | 10,350,000 | $ 0.22 |
| **For the nine months ended, September 30, 2021** | | | | |
| As Previously Reported | 48,906,593 | $ 0.09 | — | $ — |
| As Restated | 39,125,275 | $ 0.08 | 10,275,824 | $ 0.08 |

115.   The Company's condensed financial statements as of and for the three and six months ended June 30, 2021 were included in the Preliminary Proxy Statement/Prospectus and should not have been relied upon. As a result, the Company restated the material changes in its financial statements as of and for the three and six months ended June 30, 2021.

116.   Further, the Company materially misstated its EPS in its financial statements as of and for the three and six months ended June 30, 2021 as a result of the improper accounting. The Company did

not disclose that there was a revision or restatement required for either of those periods in the 3Q21 and November 2021 8-K.

117.    It is essential for a SPAC to fully comply with GAAP. Proper accounting is critical, especially related to stockholders' equity, because it is an essential element to the merger transaction. Moreover, investors rely on an entity's financial information, and likewise, fully rely on the information reported by that entity as they expect the entity to comply with GAAP.

118.    As a result of the Amended 3Q21, Embark's shares fell to a close at $8.01 per share on November 24, 2021, falling $0.51 (or approximately 6%) from the previous close.[4]

## DAMAGES TO EMBARK

119.    As a direct and proximate result of the Individual Defendants' misconduct, Embark has lost and expended, and will lose and expend, many millions of dollars.

120.    Such expenditures include, but are not limited to, legal fees associated with the Securities Class Action filed against the Company and eight of the Individual Defendants.

121.    Such expenditures also include, but are not limited to, the cost of implementing measures to remediate the Overpayment Misconduct.

122.    Such losses include, but are not limited to, significant compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company, including bonuses tied to the Company's attainment of certain objectives.

123.    As a direct and proximate result of the Individual Defendants' conduct, Embark has also suffered and will continue to suffer a loss of reputation and goodwill. Furthermore, a "liar's discount" will adversely impact the Company's stock in the future due to the Company's and their misrepresentations and the Individual Defendants' breaches of fiduciary duties.

---

[4] On August 16, 2022, Embark Technology announced a 1-for-20 reverse stock split. Embark's Class A shares began to trade on a split-adjusted basis when the market opened on August 17, 2022. On the close of November 18, 2022, the split adjusted price per share was $160.20 and this was approximately $10 per share lower than the previous close.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

124.   Plaintiff brings this action derivatively and for the benefit of Embark to redress injuries suffered, and to be suffered, because of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Embark, violations of the Securities Act and the Exchange Act for contribution under 11(f) of the Securities Act and 21D of the Exchange Act.

125.   Embark is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

126.   Plaintiff is, and has continuously been at all relevant times, a shareholder of Embark. Plaintiff will adequately and fairly represent the interests of Embark in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

127.   Plaintiff incorporates by reference and realleges each and every allegation stated above as if fully set forth herein.

128.   A pre-suit demand on the Board of Embark is futile and, as a result, excused. At the time of filing, the Board consists of Defendants Grady, Moak, Robertson, and Rodrigues (collectively, the "Director-Defendants"), and non-parties Elaine Chao ("Chao"), Patricia Chiodo, and Penelope Herscher (collectively with the Director-Defendants, the "Directors"). Plaintiff only needs to allege demand futility as to four of the seven Directors on the Board at the time this action is commenced.

129.   Demand is excused as to all of the Directors because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the schemes they engaged in knowingly or recklessly to make, and/or cause the Company to make, false and misleading statements and omissions of material facts and to cause the Company to engage in the Overpayment Misconduct. This renders them unable to impartially investigate the charges or decide whether to pursue action against themselves and the other perpetrators of the scheme.

130.   In total breach of their fiduciary duties, the Director-Defendants either knowingly or recklessly participated in the foregoing schemes to cause the Company to make false and misleading statements and to engage in the Overpayment Misconduct. The fraudulent schemes were intended to make

the Company appear more profitable, and therefore, attractive to investors. Moreover, the Directors caused the Company to fail to maintain internal controls. As a result, the Directors breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and therefore, excused.

131.    Demand is also futile on Defendant Rodrigues for the following, additional, reasons. Defendant Rodrigues is the CEO of the Company and serves as a Director on the Board.  Moreover, Defendant Rodrigues served as CEO and a director of Legacy Embark prior to the Merger. He is thus, as the Company admits, a non-independent director. As the CEO of Legacy Embark, he was ultimately responsible for the false and misleading statements and omissions that were made by the NGA Defendants during the portion of the Relevant Period prior to the Merger. As CEO, the Company supplies Defendant Rodrigues with his main occupation for which he receives substantial compensation. Therefore, it is unlikely that he would allow for a demand against the remaining directors that control his employment and set his compensation. Defendant Rodrigues is also named as a defendant in the Securities Class Action. As Embark's highest officer, and as a trusted Company director, Defendant Rodrigues did not conduct adequate oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes described herein, and consciously disregarded his duties to protect corporate assets. During the Relevant Period, he further failed to correct the false and misleading statements. For these reasons, Defendant Rodrigues breached his fiduciary duties to the Company, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

132.    Demand is also futile on Defendant Robertson for the following, additional, reasons. Defendant Robertson has served as a Director at the Company since November 2021. Moreover, Defendant Robertson served as the CEO and a Board Director of the Company prior to the Merger. He is also a member of the Board's Audit and Nominating and Corporate Governance Committees. As a Director of the Company pre and post-Merger, Defendant Robertson was ultimately responsible for all of the false and misleading statements and omissions that were made during the Relevant Period. As the CEO of NGA, he was ultimately responsible for the false and misleading statements and omissions that

were made by NGA during the portion of the Relevant Period prior to the Merger. Defendant Robertson was responsible for the Company's lack of proper disclosures of the accounting errors made by the Company. Thus, he cannot disinterestedly consider a demand to sue the directors that control his employment, other members of management with whom he worked or still works, and himself. Defendant Robertson is also named as a defendant in the Securities Class Action. As Embark's trusted Company director, Defendant Robertson did not conduct adequate oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes described herein, and consciously disregarded his duties to protect corporate assets. Furthermore, as NGA's highest officer, he breached his fiduciary duty prior to the Merger, including NGA's engagement in the Overpayment Misconduct. During the Relevant Period, he further failed to correct the false and misleading statements. For these reasons, Defendant Robertson breached his fiduciary duties to the Company, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

133.    Demand is also futile as to non-party Chao for the following, additional, reasons. Chao has served as a Director at the Company since November 2021. She also served as Legacy Embark's Director from June 2021 to November 2021. As a Director of the Company following the Merger and as a director of Legacy Embark, Chao was significantly accountable for the false and misleading statements issued during the Relevant Period. The Company supplies Chao with an occupation for which she receives substantial compensation, totaling $2.4 million for the 2021 Fiscal Year. Therefore, it is unlikely that she would allow for a demand against the remaining directors that control her employment and set her compensation. As a trusted Company director, Chao did not conduct adequate oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the schemes described herein, and consciously disregarded her duties to protect corporate assets. During the Relevant Period, she further failed to correct the false and misleading statements. For these reasons, Chao breached her fiduciary duties to the Company, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

134.    Demand is also futile on Defendant Grady for the following, additional, reasons. Defendant Grady has served as a Director at the Company since November 2021. Moreover, Defendant Grady served as Legacy Embark's Director from May 2018 until the Merger and has continued to serve in that role following the Merger. As a Director of the Company following the Merger and as a Director of Legacy Embark, Defendant Grady was significantly accountable for the false and misleading statements issued during the Relevant Period. The Company supplies Defendant Grady with his main occupation for which he receives substantial compensation. Therefore, it is unlikely that he would allow for a demand against the remaining directors that control his employment and set his compensation. As a trusted Company director, Defendant Grady did not conduct adequate oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes described herein, and consciously disregarded his duties to protect corporate assets. During the Relevant Period, he further failed to correct the false and misleading statements. For these reasons, Defendant Grady breached his fiduciary duties to the Company, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

135.    Demand is also futile on Defendant Moak for the following, additional, reasons. Defendant Moak co-founded Legacy Embark, served as Legacy Embark's Chief Technology Officer from 2016 until the Merger, and joined the Company's Board upon completion of the Merger. He is thus, as the Company admits, a non-independent director. As a Director of the Company following the Merger and as an officer of Legacy Embark, Defendant Moak was significantly accountable for the false and misleading statements issued during the Relevant Period. The Company supplies Defendant Moak with his main occupation for which he receives substantial compensation, including a payout of approximately $30.9 million for the 2021 Fiscal Year. Therefore, it is unlikely that he would allow for a demand against the remaining directors that control his employment and set his compensation. For these reasons, Defendant Moak breached his fiduciary duties to the Company, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

136.    Additional reasons that demand on the Board is futile follow.

137.    Additionally, the Director-Defendants' longstanding business and personal relationships with each other and the other Individual Defendants prevent them from acting independently and in the best interests of the Company and the shareholders. Defendants Rodrigues and Moak co-founded Legacy Embark and have worked at the Company together for approximately six years. Thus, any demand on the Director-Defendants would be futile.

138.    Defendant Robertson and non-party Chao (collectively, the "Audit Committee Directors"), served on the Company's Audit Committee upon the completion of the Merger. The Audit Committee Directors are responsible for overseeing, *inter alia*, the quality and integrity of the Company's financial statements, the Company's legal and regulatory compliance, and the Company's system of internal controls. The Audit Committee Directors failed to ensure the integrity of the Company's financial statements and internal controls, in addition to failing to ensure compliance with laws and regulations. The Audit Committee Directors' failure to ensure that the Company implemented adequate internal controls caused the Company to issue false and misleading financial statements to investors. Thus, the Audit Committee Directors breached their fiduciary duties, are not disinterested, and demand is excused as to them.

139.    Embark has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against the Director-Defendants or any others who were responsible for that wrongful conduct to attempt to recover for Embark any part of the damages Embark suffered and will continue to suffer. Thus, any demand upon the Directors would be futile.

140.    The acts complained of herein constitute violations of fiduciary duties owed by Embark's officers and directors, and these acts are incapable of ratification.

141.    The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director-Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As all of the Director-Defendants, and if not all at least a majority of the Directors, face a substantial likelihood of

liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

142.    If there is no directors' and officers' liability insurance, then the Director-Defendants will not cause Embark to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

143.    Thus, for all of the reasons set forth above, all of the Director-Defendants, and, if not all of them, at least four of the Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## **FIRST CLAIM**

### **Against Defendants Robertson, Manget, Dalglish, Jarratt, Schaefer, and Sparkes for Violations of Section 14(a) of the Exchange Act**

144.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

145.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

146.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

147.    Defendants Robertson, Manget, Dalglish, Jarratt, Schaefer, and Sparkes caused the Definitive Proxy Statement to be false and misleading by: (1) failing to abide by GAAP in classifying the redeemable public shares; (2) failing to adhere to the Code of Ethics; and (3) agreeing to merge with

Legacy Embark without conducting sufficient due diligence.

148.    Defendants Robertson, Manget, Dalglish, Jarratt, Schaefer, and Sparkes further caused the Definitive Proxy Statement to be false and misleading by failing to disclose that the Code of Ethics was not complied with. Such noncompliance is shown not only through the accounting errors discussed herein, but also by the NGA Defendants' engagement in the Overpayment Misconduct and solicitation of the Merger without conducting sufficient due diligence.

149.    In addition, Defendants Robertson, Manget, Dalglish, Jarratt, Schaefer, and Sparkes caused the Definitive Proxy Statement to be materially false and misleading, and failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, it contained material errors that required the Company to issue the Restatement for such financial statements to be in accordance with GAAP and failed to disclose, *inter alia*, that: (1) the error had a negative impact on the Company's financials as of and for the three and six months ended June 30, 2021, or as of and for the three and nine months ended September 30, 2021; (2) treating this error as a restatement instead of a revision would result in the Company making adjustments to, and the reissuance of, the amounts reflected in the prior financial statements, as compared to making a revision only to the January 15, 2021 financial statements; (3) the Company violated GAAP relating to the accounting of temporary and permanent equity, principles which had been in practice since 2009; and (4) the Company failed to maintain adequate internal controls. As a result, Embark's public statements were materially false and misleading at all relevant times.

150.    The Company was damaged as a result of Defendants Robertson, Manget, Dalglish, Jarratt, Schaefer, and Sparkes material misrepresentations and omissions in the Definitive Proxy Statement.

151.    Plaintiff on behalf of Embark has no adequate remedy at law.

## SECOND CLAIM

### Against Individual Defendants for Breach of Fiduciary Duties

152.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

153.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Embark's business and affairs.

154.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

155.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Embark.

156.    In further breach of their fiduciary duties owed to Embark, the Individual Defendants willfully or recklessly made and/or caused the Company to make to the investing public certain statements that were materially false and misleading, including material errors that required the Company to issue the Restatement for such financial statements to be in accordance with GAAP. The Individual Defendants further failed to disclose, *inter alia*, that: (1) the error had a negative impact on the Company's financials as of and for the three and six months ended June 30, 2021, or as of and for the three and nine months ended September 30, 2021; (2) treating this error as a restatement instead of a revision would result in the Company making adjustments to, and the reissuance of, the amounts reflected in the prior financial statements, as compared to making a revision only to the January 15, 2021 financial statements; (3) the Company violated GAAP relating to the accounting of temporary and permanent equity, principles which had been in practice since 2009; and (4) the Company failed to maintain adequate internal controls. As a result, Embark's public statements were materially false and misleading at all relevant times.

157.    The Individual Defendants failed to correct and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

158.    Also, in breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

159.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts

set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities and disguising insider sales.

160.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

161.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Embark has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

162.    Plaintiff on behalf of Embark has no adequate remedy at law.

## THIRD CLAIM

**Against Defendants Robertson, Manget, Jarratt, Dalglish, Schaefer, Sparkes, Rodrigues, and Hawwa for Contribution Under Sections 11(f) of the Securities Act and 21D of the Exchange Act**

163.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

164.    Embark, along with Defendants Robertson, Manget, Jarratt, Dalglish, Schaefer, Sparkes, Rodrigues, and Hawwa, are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Section 11 of the Securities Act, among other claims. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendants Robertson, Manget, Jarratt, Dalglish, Schaefer, Sparkes, Rodrigues, and Hawwa willful and/or reckless violations of their obligations as officers and/or director of Embark.

165.    Defendants Robertson, Manget, Jarratt, Dalglish, Schaefer, Sparkes, Rodrigues, and Hawwa, because of their positions of control and authority as officers and/or director of Embark, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Embark, including the wrongful acts complained of herein and in the Securities Class Action.

166.    Accordingly, Defendants Robertson, Manget, Jarratt, Dalglish, Schaefer, Sparkes, Rodrigues, and Hawwa are liable under 15 U.S.C. § 78j(b), which creates a private right of action for

contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

167.    As such, Embark is entitled to receive all appropriate contribution or indemnification from Defendants Robertson, Manget, Jarratt, Dalglish, Schaefer, Sparkes, Rodrigues, and Hawwa.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Embark, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached their fiduciary duties to Embark;

(c)    Determining and awarding to Embark the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)    Directing Embark and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Embark and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws and/or Certificate of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2. a provision to permit the shareholders of Embark to nominate at least three candidates for election to the Board; and

3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

(e)     Awarding Embark restitution from the Individual Defendants, and each of them;

(f)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 13, 2022          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/Laurence M. Rosen*
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

Verified Shareholder Derivative Complaint

## **VERIFICATION**

I, Sergio Tron am a plaintiff in the within action. I have reviewed the allegations made in this shareholder derivative complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _th day of _____, 2022.

12/13/2022

Sergio Tron

Sergio Tron